UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

v.

Jordan Giacona,

Defendant.

Case No. 26-20214

Hon. Terrence G. Berg

______________________________/

**United States's Response to Defendant's Motion to Dismiss (ECF No. 25)**

Weeks after the motion cutoff deadline had passed, Defendant Jordan Giacona filed a motion to dismiss the indictment. Giacona did not offer any reason, let alone good cause, for the delayed filing. And Giacona's contention that the threats he made on X are not true threats has no merit. The Court should deny his motion.

## I. Background

### A. 2025 Conduct

In late April 2025, the Secret Service advised the FBI that Jordan Giacona was making threats towards the president, the FBI, the CIA, Elon Musk, and adult victim G.W., among others on X (formerly known as Twitter).

The FBI ran a search and discovered an X user, Leijhts/@Leijhts, whose self-reported identifying information was Jordan Giacona. In May 2025, the account had over 6,875 posts containing rhetoric related to skateboarding, video

games, building computers/electronic instrument systems, in addition to anti-government rhetoric and threatening rhetoric toward politicians, notable figures, and other users on the platform. After reviewing the account, agents located the following posts:

- On April 1, 2025, at 12:51 pm EDT:
  - "Even if you destroyed everything in the end im still going to have to take down your other sharhplders At the same time poewr Eriegardless @elonmusk @realDonaldTrump @AdrianDittman"

- On April 10, 2025, at 3:28 pm EDT:
  - "They cant change their stance on the war But I can change my stance And annihilate you all with catastrophe @elonmusk @fbi @FBIDirectorKash @cia @gwXXXXy @bitvargen @realDonaldTrump @hi_mija @flobot5".

- On April 13, 2025, at 9:38 am EDT:
  - "So why tf was it on the table to begin with? Can we please get a competent leader put in charge of doge @realdonaldtrump ill probably k*** you honestly if I feel bad aboit your term as president im taking eberything Every little thing @elonmusk"

- On April 13, 2025, at 11:15 am EDT:
  - "Im actually going to k*** you Idk dude @elonmusk @realDonaldTrump its war and youre literally helping k*** my family You won't survive I just Don't understand… how you could do something that ends in your death Its not like you shouldnt believe me Youre literally on the wrong side of the war. K****ing you is easy, you nonces"

- On April 14, 2025, at 7:41 pm EDT:
  - "@whitehouse I will actually k*** you @realdonaldtrump yes ik im running out of time I thought about it, your wrong" in response to a post by the @WhiteHouse X.com account that wished X.com users a blessed Passover.

- On April 17, 2025 at 7:10 am EDT:
    - "@bitvargen @cia @fbi @fbidetroit @gwXXXXy because Garfield opened the door to how to legally threaten someones life if they should die it is legal to threaten them Entirely legal You are all de** @hi_mija @elomusk @realDonaldTrump"

- On April 18, 2025, at 11:16 pm EDT:
    - "9f course youre dead! If you think you can just take our fucking money and then do your own fucking thing…. Imthe fucking mob Youre dead Youre already dead Pretty mich @realDonaldTrump"

- On April 18, 2025, at 11:18 pm EDT:
    - "@realdonaldtrump my word is law im telling everyone K*** you if its convenient, and if it isn't to set up a 9/11 magnitude event @gwXXXXy Call 911"

- On April 18, 2025, at 11:25 pm EDT:
    - "@realdonaldtrump uoure fucking dumb and need to di* im the mob. We don't exactly have a product or a shelf. @gwXXXXy But somehow we do enough business to open up a bunch of grocery stores"

- On April 29, 2025, at 10:45 pm EDT:
    - "You want to ignore missingno. That's on you I wont have any part in it @cia @fbi @realDonaldTrump @elonmusk @gwXXXXy I will k*** you all outright @bitvargen @flobot5 @hi_mija"

Agents obtained a complaint and arrest warrant for Giacona on May 15, 2025. Before they could execute it, Giacona posted additional threats on X on May 17-18, 2025, including:

- THE COPS AND FEDS HAVE BEEN HERE MORE THAN TEN TIMES AND NOT ONCE HAS PEOPLE DISCUSSED WITH ME THE SHIT IM FUCKING SAYING IM NOT FUCKING KIDDING THERE'S NO FUCKING OPTION BUT TO ***** YOU ALL ONE A T A TIME

- "@SecretService @realDonaldTrump DO IT PULL THE TRIGGER KNOCK ON MY DOOR PULL THE TRIGGER KNOCK PULL @SecretService @realDonaldTrump ILL **** YOU"

**B. 2022 Conduct**

The threats Giacona posted in May 2025 were not his first. In 2021-2022, Giacona sent threatening tweets, texts, and calls to adult victim G.W. Giacona had met G.W. sometime in 2021 and later tried to send G.W. some material online. When G.W. did not respond, Giacona felt slighted and began to send him messages through different accounts that he created.

Giacona began sending G.W. threats on Twitter in mid-January 2021. In one of the messages, Giacona threatened to shoot up a show at St. Andrews Hall in Detroit that G.W. was planning to perform.

In early March 2022, G.W.'s manager emailed a cease and desist letter to Giacona. That did not deter Giacona, however, who continued to send threatening texts to G.W. Although G.W. would block the number these texts were sent from, Giacona used different phone numbers in order to send these texts. On March 16, 2022, G.W. obtained a restraining order from a state court in Los Angeles, California, against Giacona (on April 7, 2022 this order was made into a permanent restraining order).

After the restraining order, Giacona continued to send threatening texts and tweets. These included the following messages:

- March 27, 2022 (tweet):
    - "F****** YEARS AND YOU MADE A STUP*** FAKE A** BS RESTRAINING ORDER ILL ***** MURD** YOU @gwXXXXXX""YOU RHINED MY F**** LIFE ILL F**** MURD*** YOURE ENTIRE F**** FAMILY WELCOME TO THE FAMILY WELCOME TK FAMILY F***"

    - "YOU I F***K TF OUT OF ALL OF YIU H DUMB F**** LFU** LOSE F*** JLL K*** YOU @gwXXXXXX"

    - "EVERY F***** DAY FORNYEARS I DKNT OWE U SHIT GIVE ME ALL UR F**** MONEY IDGAG ILL F*** K*** YOU F*** MUR**( YOU IDGAF IL ( K** ILL K**** IL* K*** YKU @gwXXXXXX"

- April 11, 2022 (text):
    - "ILL KILL YOUR PARENTS YOU FUCKING RETARD ILL FUCKING KILL THEM BEFORE YOU"
    - "ILL KILL YOUYOU GAY LOSER. YOU ACTUAL FAT AND GAY FUCKING OLD MAN ILL SLAUGHTER EVERYONE OF YOU KILL KILL YOUR FUCKING FAMILIES."

- April 18, 2022 (text):
    - "I swear i will murder all of you and your familied"; "I'LL FUCKUNG RAPE YOUR FUCKING DAIGHTER"; "I'LL KILL ALL HER FRIENDS. ILL TAKE A LIMB FOR EACH OF HER HOMES I BURN."
    - "Im going to kill you. Im going to kill you imgoing to kl uou im going to kill you OM GOING TO KILL YOU…."

During that prior investigation, law enforcement discovered that Giacona created numerous social media accounts and used no less than ten different telephone numbers to send threatening messages to GW. The government charged Giacona with transmitting threats in interstate commerce in violation of 18 U.S.C. § 875(c). (United States v. Giacona, No. 22−mj−30398). Giacona entered into a pretrial diversion agreement for a period of 12 months and the government dismissed the complaint without prejudice. (*Id*., ECF No. 16, PageID.48). Giacona completed diversion on May 1, 2024. Just one year later, he began to send out the threatening messages detailed above.

**C. Procedural Background**

On April 16, 2026, the government charged Giacona with one count of cyberstalking in violation of 18 U.S.C. § 2261A(2) and three counts of transmitting threats through interstate commerce in violation of 18 U.S.C. § 875(c). (ECF No. 19). The Court set forth a preliminary scheduling order on April 20, 2026 (ECF No. 21), and the parties thereafter stipulated to an extension of the dates (ECF No. 24). In the operative scheduling order, this Court set a deadline for pretrial motions by July 10, 2026. (ECF No. 24). Giacona filed his motion to dismiss the indictment on July 30, 2026. (ECF No. 25).

## Argument

### I. Giacona's Motion is Untimely.

The motions deadline in this case was set for July 10, 2026. Giacona has filed an untimely motion to dismiss and has not asked for an extension or provided good cause to excuse his delay in the filing of the motion.

Pursuant to Rule 12 of the Federal Rules of Criminal Procedure, the Court may set a deadline for the parties to make pretrial motions, and it is within the Court's discretion to extend this deadline and grant relief from the waiver that attaches to motions not filed within this deadline, where good cause has been shown. Fed. R. Crim. P. 12(c), (e). "A pretrial motion made pursuant to Federal Rule of Criminal Procedure 12(b)(3) is untimely if filed after a deadline set by the district court pursuant to Rule 12(c)(1)." *United States v. Trujillo-Molina*, 678 F. App'x 335, 337 (6th Cir. 2017) (citing Fed. R. Crim. P. 12(c)(3)).

This Court should deny Giacona's motion for this reason alone. *See, e.g., United States v. Johnson*, 844 F. App'x 838, 841 (6th Cir. 2021) (affirming district court's denial of motion to suppress as untimely and filed without a showing of good cause for the delay).

**II. Giacona's motion lacks merit.**

Under Federal Rule of Criminal Procedure 12, a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Among the types of motions that may be filed under Rule 12 are motions objecting to "a defect in the indictment." Fed. R. Crim. P. 12(b)(3)(B).

When reviewing a motion to dismiss an indictment, the court must read the indictment as a whole and accept the factual allegations as true. *United States v. Killingsworth*, No. 21-3028, 2022 WL 294083, at *2 (6th Cir. Feb. 1, 2022) (citing *United States v. Reed*, 77 F.3d 139, 140 n.1 (6th Cir. 1996) (en banc)). An indictment is sufficient if it (1) "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," and (2) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007).

To prove a threat under 18 U.S.C. § 875(c), the government must establish the following three elements: "(1) the defendant sent a message in interstate commerce; (2) a reasonable observer would view the message as a threat; and (3) the defendant intended the message as a threat." *United States v. Howard*, 947 F.3d 936, 943 (6th Cir. 2020) (quoting *United States v. Doggart*, 906 F.3d 506, 510 (6th Cir. 2018)) (internal quotation marks omitted). Giacona does not contest that the indictment filed against him alleges all three elements. Instead, he argues that his statements are protected by the First Amendment and are not true threats, but rather, "hyperbolic advocacy." (Giacona Mot., ECF No. 25, PageID.93).

The First Amendment does not protect "true threats." *Virginia v. Black*, 538 U.S. 343, 359 (2003). "[W]here the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular

individual or group of individuals," the First Amendment permits prosecution of that threat. *Black*, 538 U.S. at 359. In evaluating whether a statement constitutes a "true threat," rather than political hyperbole, the Sixth Circuit recognizes that "the defendant must subjectively intend his communication to be threatening." *United States v. Doggart*, 906 F.3d 506, 512 (6th Cir. 2018). Statements qualify as threatening when they amount to "a serious expression of an intention to inflict bodily harm." *United States v. Houston*, 683 F. App'x 434, 438 (6th Cir. 2017); *see also United States v. Howard*, 947 F.3d 936, 947 (6th Cir. 2020).

Giacona relies on *Watts*—a decision by the Supreme Court holding that the defendant's statement, "if they ever make me carry a rifle the first man I want to get in my sights is L.B.J.," made in the context of the political protest of the Vietnam war, was not a true threat. *Watts v. United States*, 394 U.S. 705, 706 (1969). Watts, however, is distinguishable because the Supreme Court observed that the threat there was "expressly conditional" and took the statement in its context during a political rally. *Id*.

In this case, Giacona's threats were not conditional and targeted not only the president and other political figures and institutions, but a lay victim—G.W. who has no affiliation with the government and who was previously targeted by Giacona in 2022. Giacona's threats are more akin to those that the Sixth Circuit found to be true threats in *United States v. Killingsworth*, No. 21-3028, 2022 WL

294083, at *1 (6th Cir. Feb. 1, 2022). In *Killingsworth*, the defendant made a Facebook post stating "I think a cop needs killed around here again," and "[M]ore cops need shot dead. They kill us, we kill them simple." *Id*. The Sixth Circuit determined that at the juncture of a motion to dismiss, the district court properly focused on the sufficiency of the allegations and determined that whether Killingsworth subjectively intended to make a threat was a question of fact to be decided by the jury. *Id*. at *5.

Giacona's threats are also similar to those that the Sixth Circuit found to constitute true threats as a matter of law on a sufficiency challenge. *See United States v. Howard*, 947 F.3d 936, 948 (6th Cir. 2020) (defendant's voicemail saying "I'm going to kill you. I am going to murder you" was a true threat); *United States v. Doggart*, 906 F.3d 506, 510 (6th Cir. 2018) (defendant's statements to a confidential source that "those guys [in Islamberg have] to be killed. Their buildings need to be burnt down. If we can get in there and do that not losing a man, even the better" considered to be a true threat).

Importantly, the context of Giacona's threats reveals that this was not merely protected political speech or incoherent ramblings. This Circuit has repeatedly endorsed considering the context of a statement's issuance in the assessment of whether it is a true threat. *See e.g, United States v. Craft*, No. 23-5706, 2024 WL 5003231, at *5 (6th Cir. Dec. 6, 2024) ("The 'objective standard of whether a

reasonable person would foresee that the statement would be interpreted as a threat' cannot be 'determined in a vacuum' . . . earlier conduct is 'critical information'"). Count one of the Indictment charges Giacona with cyberstalking. Giacona had previously sent multiple threats to G.W. in 2022. When considering the context in which Giacona sent the 2025 threats, nothing about his most recent set of threats would have suggested that Giacona's threats were jokes or just political statements. *See Howard*, 947 F.3d at 948 (considering the context of the defendant's threats and their repeated nature and noting that although the messages "may have been somewhat jumbled" "[n]othing about the context of the [voicemail] suggested he was joking"); *United States v. Woollacott*, No. 25-5723, 2026 WL 1683743, at *4 (6th Cir. June 10, 2026) ("taken in context—Woollacott directly called the Congressman's office; the message followed a similarly threatening voicemail left by Woollacott a month earlier; the statement had an ominous, visceral tone").

Also, contrary to Giacona's assertion that his statements "are not imminent threats" or "unlikely to produce imminent lawless action" (Giacona Mot. at PageID.89), there is no requirement that true threats convey a threat of imminent harm or that the maker of the threats have the capacity to carry out the threats. This Circuit has "consistently upheld convictions based on an expression of subjective intention to threaten the victim, even if the threat is not feasible for the defendant

to carry out, or the defendant does not have an ability to do so." *Howard*, 947 F.3d at 949. Giacona's attempt to conflate incitement crimes with threat-based crimes ignores that the Supreme Court's jurisprudence distinguishes between the two types of crimes. *See Black*, 538 U.S. at 359 (noting the constitution forbids a state from proscribing advocacy of the use of force "except where such advocacy is directed to inciting or producing imminent lawless action" or in the case of a "true threat.").

The Supreme Court has also recently distinguished between the two types of crimes when deciding that the First Amendment requires a weaker standard of subjective intent for threat crimes than for incitement crimes. *Counterman v. Colorado*, 600 U.S. 66, 78–82 (2023). The Court explained that "incitement to disorder is commonly a hair's-breadth away from political 'advocacy,'" and a strong intent requirement "ensure[s] that efforts to prosecute incitement would not bleed over, either directly or through a chilling effect, to dissenting political speech at the First Amendment's core." *Id*. at 81. By comparison, an equally strong intent requirement "is not needed" for threat crimes because "[f]or the most part, the speech on the other side of the true-threats boundary line—as compared with the advocacy addressed in our incitement decisions— is neither so central to the theory of the First Amendment nor so vulnerable to government prosecutions." *Id*.

Giacona has not been charged with incitement to violence; he has been charged with making interstate threats.

In sum, Giacona inappropriately requests dismissal of an indictment that sufficiently alleges the required elements of transmitting a threat in interstate commerce. Giacona seeks to test the sufficiency of the United States's evidence that he made a true threat. His arguments fail because "courts evaluating motion to dismiss do not evaluate the evidence upon which the indictment is based." *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001) (citations omitted). To the extent Giacona desires to challenge the sufficiency of the United States's evidence, he can do so at trial. At this juncture, his challenge is premature and should be denied.

**Conclusion**

The Court should deny Giacona's untimely and meritless motion to dismiss.

Respectfully submitted,

Jerome F. Gorgon, Jr.
United States Attorney

/s/ Sarah Alsaden
Sarah Alsaden
Diane Princ
Assistant United States Attorneys
211 W. Fort St., Suite 2001
Detroit, Michigan 48226
(313) 226-9100

Dated: August 20, 2026

**Certificate of Service**

I certify that on August 20, 2026, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Michigan using the ECF system, which will send notification of the filing to all users of record.

/s/ Sarah Alsaden
Assistant United States Attorney