UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br>vs.<br><br>**JORDAN GIACONA,**<br>Defendant. | **2:26-CR-20214-TGB-KGA**<br>HON. TERRENCE G. BERG<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT (ECF NO. 25)** |

This is a criminal case in which the Government charges the Defendant with making threats and cyberstalking, but the Defendant seeks to dismiss the Indictment claiming his statements are free speech protected by the First Amendment. Due to recent behavior by the Defendant, the Government also seeks to revoke his bond and have him psychologically examined.

Defendant Jordan Giacona has been charged in an indictment with one count of cyberstalking in violation of 18 U.S.C. § 2261A(2) and three counts of interstate communication of a threat, in violation of 18 U.S.C. § 875(c), for alleged threatening posts on X.com towards the President, the FBI, the CIA, Elon Musk, and adult victim GW. Now before the Court is Giacona's Motion to Dismiss the Indictment. ECF No. 25. Giacona contends in his motion that his speech is protected by the First Amendment and that his posts on X are not true threats sufficient to

support a conviction under § 875(c) and § 2261A(2). The Government has filed a response in opposition to Giacona's motion. ECF No. 27. The Court held a hearing on the motion to dismiss on November 6, 2026, at which counsel for Giacona and the Government appeared and argued. For the reasons that follow, Giacona's motion to dismiss will be **DENIED**.

## I. BACKGROUND

### A. Giacona Has a History of Making Threatening Statements Online

The Government presents evidence indicating that Giacona has a history of making threatening statements online. ECF No. 1, PageID.7–8. In 2021 and 2022, Giacona sent threatening tweets, texts, and calls to adult victim GW, a music performer who resides in Los Angeles, California. *Id.* According to the Government, Giacona had met GW sometime in 2021 and tried to send him some material online. When GW did not respond, Giacona felt slighted and began to send GW messages through multiple different accounts he created. *Id.*; ECF No. 27, PageID.99.

Once Giacona began messaging GW about murdering and killing him, including threatening to shoot up a show at St. Andrews Hall in Detroit where GW was planning to perform, GW started the process for obtaining a restraining order against Giacona from a state court in Los Angeles, California. A temporary order was issued on March 16, 2022,

and a permanent order on April 7, 2022. ECF No. 1, PageID.8; ECF No. 27, PageID.99.

Despite the restraining order, Giacona continued to send threatening texts and tweets to adult victim GW, including the following messages:

- **March 27, 2022 (tweet):** "F****** YEARS AND YOU MADE A STUP*** FAKE A** BS RESTRAINING ORDER ILL ***** MURD** YOU @gwXXXXXX""YOU RHINED MY F**** LIFE ILL F**** MURD*** YOURE ENTIRE F**** FAMILY WELCOME TO THE FAMILY WELCOME TK FAMILY F***"

  "YOU I F***K TF OUT OF ALL OF YIU H DUMB F**** LFU** LOSE F*** JLL K*** YOU @gwXXXXXX"

  "EVERY F***** DAY FORNYEARS I DKNT OWE U SHIT GIVE ME ALL UR F**** MONEY IDGAG ILL F*** K*** YOU F*** MUR**( YOU IDGAF IL ( K** ILL K**** IL* K*** YKU @gwXXXXXX"

- **April 11, 2022 (text):** "ILL KILL YOUR PARENTS YOU FUCKING RETARD ILL FUCKING KILL THEM BEFORE YOU" o "ILL KILL YOUYOU GAY LOSER. YOU ACTUAL FAT AND GAY FUCKING OLD MAN ILL SLAUGHTER EVERYONE OF YOU KILL KILL YOUR FUCKING FAMILIES."

- **April 18, 2022 (text):** "I swear i will murder all of you and your familied"; "I'LL FUCKUNG RAPE YOUR FUCKING DAIGHTER"; "I'LL KILL ALL HER FRIENDS. ILL TAKE A LIMB FOR EACH OF HER HOMES I BURN."

  "Im going to kill you. Im going to kill you imgoing to kl uou im going to kill you OM GOING TO KILL YOU…."

ECF No. 27, PageID.100.

These messages were investigated by federal law enforcement. During the investigation, investigators discovered that Giacona created numerous social media accounts and used no less than ten different telephone numbers to send threatening messages to GW. *Id.* PageID.101.

Based on this conduct, the Government charged Giacona with transmitting threats in interstate commerce in violation of 18 U.S.C. § 875(c). *United States v. Giacona*, Case No. 22−mj−30398 (E.D. Mich.). On May 1, 2023, Giacona entered into an Agreement for Pretrial Diversion with the United States Attorney for the Eastern District of Michigan for a period of 12 months, and the Government dismissed the complaint without prejudice. *Id.* (ECF No. 16, PageID.48). Giacona completed diversion on May 1, 2024. One year later, he began to send out additional threatening messages that are described in detail below.

**B. Giacona's 2025 Conduct**

According to the Criminal Complaint in this action, in the course of conducting routine analysis of social media, the United States Secret Service ('USSS") discovered many threatening posts by X.com ("X") user Leijhts/@Leijhts toward the President of the United States ("POTUS"), the FBI, the CIA, and other users on the platform. ECF No. 1, PageID.4. The self-reported identifying information for User Leijhts/@Leijhts' on the platform indicated that the user was Defendant Jordan Giacona. *Id.* at PageID.3.

On April 30, 2025, the USSS provided an online tip to the FBI advising of online threats on X by Giacona, under the username Leijhts/@Leights, toward the POTUS, the FBI, the CIA, Elon Musk, and other users on the platform, including adult victim GW. *Id.* As of May 5, 2025, the account had over 6,875 posts containing rhetoric related to skateboarding, video games, and building computers/electronic instrument systems, in addition to posts containing antigovernment rhetoric and threatening rhetoric toward politicians, notable figures, and other users on the platform. *Id.* at PageID.3–4. For example, the agents located the following posts containing threatening language:

- **On April 1, 2025, at 12:51 pm EDT:** "Even if you destroyed everything in the end im still going to have to take down your other sharhplders At the same time poewr Eriegardless @elonmusk @realDonaldTrump @AdrianDittman"

- **On April 10, 2025, at 3:28 pm EDT:** "They cant change their stance on the war But I can change my stance And annihilate you all with catastrophe @elonmusk @fbi @FBIDirectorKash @cia @gwXXXXy @bitvargen @realDonaldTrump @hi_mija @flobot5".

- **On April 13, 2025, at 9:38 am EDT:** "So why tf was it on the table to begin with? Can we please get a competent leader put in charge of doge @realdonaldtrump ill probably k*** you honestly if I feel bad aboit your term as president im taking eberything Every little thing @elonmusk"

- **On April 13, 2025, at 11:15 am EDT:** "Im actually going to k*** you Idk dude @elonmusk @realDonaldTrump its war and youre literally helping k*** my family You won't survive I just Don't understand… how you could do something that ends in your death

Its not like you shouldnt believe me Youre literally on the wrong side of the war. K****ing you is easy, you nonces"

- **On April 14, 2025, at 7:41 pm EDT:** "@whitehouse I will actually k*** you @realdonaldtrump yes ik im running out of time I thought about it, your wrong" in response to a post by the @WhiteHouse X.com account that wished X.com users a blessed Passover.

- **On April 17, 2025 at 7:10 am EDT:** "@bitvargen @cia @fbi @fbidetroit @gwXXXXy because Garfield opened the door to how to legally threaten someones life if they should die it is legal to threaten them Entirely legal You are all de** @hi_mija @elomusk @realDonaldTrump"

- **On April 18, 2025, at 11:16 pm EDT:** "9f course youre dead! If you think you can just take our fucking money and then do your own fucking thing…. Imthe fucking mob Youre dead Youre already dead Pretty mich @realDonaldTrump"

- **On April 18, 2025, at 11:18 pm EDT:** "@realdonaldtrump my word is law im telling everyone K*** you if its convenient, and if it isn't to set up a 9/11 magnitude event @gwXXXXy Call 911"

- **On April 18, 2025, at 11:25 pm EDT:** "@realdonaldtrump uoure fucking dumb and need to di* im the mob. We don't exactly have a product or a shelf. @gwXXXXy But somehow we do enough business to open up a bunch of grocery stores"

- **On April 29, 2025, at 10:45 pm EDT:** "You want to ignore missingno. That's on you I wont have any part in it @cia @fbi @realDonaldTrump @elonmusk @gwXXXXy I will k*** you all outright @bitvargen @flobot5 @hi_mija"

*Id.* at PageID.4–6.

Agents obtained a complaint and arrest warrant for Giacona on May 15, 2025. ECF Nos. 1, 2. On May 30, 2025, Giacona was arrested,

made an initial appearance, and was released on bond. ECF Nos. 5, 9, 10. The Government asserts that, before agents could execute the warrant, Giacona had posted additional threats on May 17–18, 2025, including:

- "THE COPS AND FEDS HAVE BEEN HERE MORE THAN TEN TIMES AND NOT ONCE HAS PEOPLE DISCUSSED WITH ME THE SHIT IM FUCKING SAYING IM NOT FUCKING KIDDING THERE'S NO FUCKING OPTION BUT TO ***** YOU ALL ONE A T A TIME"

- "@SecretService @realDonaldTrump DO IT PULL THE TRIGGER KNOCK ON MY DOOR PULL THE TRIGGER KNOCK PULL @SecretService @realDonaldTrump ILL **** YOU"

ECF No. 27, PageID.98–99.

On April 15, 2026, the Government charged Giacona with one count of cyberstalking in violation of 18 U.S.C. § 2261A(2), alleging that Giacona acted with "intent to kill, injure, harass, and intimidate" G.W. by using "the phone, the internet, and the social media application X, to engage in a course of conduct that placed G.W. in reasonable fear of death and bodily injury, and caused, attempted to cause, and would reasonably be expected to cause substantial emotional distress to G.W." ECF No. 19, PageID.60–61. The indictment also charged Giacona with three counts of transmitting threats through interstate commerce in violation of 18 U.S.C. § 875(c), based on April 13, 2025, April 17, 2025, and April 29, 2025 posts discussed above. *Id.* PageID.61–62.

**C. Giacona's Post-Indictment Conduct**

The Government states that it has learned that Giacona had made additional threats to individuals who were not previously the subject of his threats, including to an acquaintance (AV2) he had met in a community group. ECF No. 34, PageID.128–29 (citing Police Report (filed under seal), ECF No. 37). AV2 reported to law enforcement that Giacona's threats began on August 21, 2026 and relentlessly continued through September 1, 2026, despite AV2's efforts to block the accounts that the threats were coming from. *Id*. These threatening messages and posts included threats to kill and other threats, such as "I plan on k***ing you. Thats [sic] why you don't give you name. I will literally ki** you" and "I'll still kill you," "ppl literally are going to d**", "[y]ou could well lose everything," "the law legally states that i can legally kill you at any legal point," "people are going to die for sure," and "I'm still going to kill you all." ECF No. 38.

**D. Procedural History**

Following Giacona's April 15, 2026 indictment and release on bond, the Court entered a Criminal Trial Notice and Scheduling Order on April 20, 2026, ECF No. 21, and the parties thereafter stipulated to an extension of the dates. ECF No. 24. Under the operative scheduling order, pretrial motions were due by July 10, 2026. *Id.* Giacona failed to file any pretrial motion by July 10, 2026. He instead filed the instant Motion to Dismiss the Indictment almost three weeks late, on July 30, 2026. ECF

No. 25. The Government filed a timely response in opposition to Giacona's motion on. ECF No. 27. The Court scheduled the motion to dismiss for hearing on September 11, 2026.

On September 2, 2026, Pretrial Services reported that Giacona's mental health had deteriorated and requested a bond review hearing. ECF No. 28. The Pretrial Services Officer detailed difficulties Giacona was having with his parents, including that Giacona posted a Google review of his father's employer which his father took as "defamation" and which resulted in his father calling the Warren Police Department. *Id.* PageID.110–11. Giacona's father reported that as a result of Giacona's disparaging comments, his company's human resources department became involved and his position with the company was put in jeopardy. *Id.* The Pretrial Service Officer also reported that Giacona had been sending threatening messages to a former classmate (a foreign exchange student from Turkey). *Id.* PageID.111. The Pretrial Services Officer further detailed numerous concerning confusing and unorganized text messages Giacona exchanged with her regarding his parents, alleged sexual assault, drug use, manipulation, and lies. *Id.* The Pretrial Services Officer requested a bond review hearing on September 11, 2026.

On September 11, 2026, the date set for the motion to dismiss and bond review hearing, Defense counsel reported to the Court that Giacona had checked into an inpatient hospital for treatment and would likely be there for two weeks. The hearing therefore was adjourned and the Court

set a telephonic status conference for two weeks later to assess whether there needed to be any changes to Giacona's bond conditions. ECF No. 29.

At the October 1, 2026 telephonic status conference, Defense counsel reported that Giacona had been released weeks earlier, only four to five days after checking in for inpatient treatment, and that he was competent and had been treating with a psychiatrist and therapist, as recommended by pretrial services. Defense counsel further stated that pretrial services was not recommending detention at this time and instead wants to utilize an application that would require Giacona to check in daily to ensure compliance with the bond conditions, as well a zero tolerance policy for any further bond violations, which would result in revocation of his bond.

On October 6, 2026, Giacona filed a Notice of Insanity Defense, ECF No. 33, pursuant to Fed. R. Crim. P. 12.2(a). The Notice stated that the defense intends to assert at trial the defense of insanity at the time of the alleged offenses and to introduce expert evidence at trial relating to a mental disease or defect or any other mental condition of Giacona bearing on the issue of guilt. *Id.*

On October 13, 2026, the Government filed a Motion for Revocation of Pretrial Release and for Custodial Psychiatric or Psychological Examination of Giacona. ECF No. 34. The Government argues that Giacona's bond should be revoked because there is probable cause to

believe that he committed federal crimes by using Instagram to threaten AV2, and there is no condition or set of conditions that could reasonably assure the safety of victims GW or AV2 given Giacona's history of using social media to make threats against them and others, given that Giacona's new criminal conduct occurred while he was on pretrial release. *Id.* For the reasons set out in detail at the hearing, the Court concluded that conditions of release could be fashioned that would adequately protect the community, and therefore the Government's motion to revoke bond was denied. ECF Nos. 40, 41. Also for reasons expressed at the hearing the Court ordered that Giacona be subjected to a competency examination. ECF No. 40.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(1) allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." A motion asserting a defect in the indictment, such as the failure to state an offense, must be made before trial. Fed. R. Crim. P. 12(b)(3)(B). Under Rule 12(b)(3), a motion to dismiss an indictment is appropriate if the undisputed facts establish that the offense charged cannot be proven as a matter of law. *United States v. Levin*, 973 F.2d 463, 470 (6th Cir. 1992); *see also United States v. Ali*, 557 F.3d 715, 719–20 (6th Cir. 2009) ("[Defendant's] motion to dismiss did not assert an innocence defense; rather, it requested dismissal of the indictment on the ground that, as a matter of law, the

undisputed facts did not give rise to the offense charged in the indictment."). Further, the district court "may make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate finder of fact." *Levin*, 973 F.2d. at 467. But the Court is "not limited to the face of the indictment in ruling on the motion to dismiss since Rule 12 vest[s] the [C]ourt with authority 'to determine issues of fact in such a manner as the [C]ourt deems appropriate.'" *Id.* (quoting *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976))

Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). "An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Coss*, 677 F.3d 278, 287–88 (6th Cir. 2012) (citation modified) (quoting *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010)). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Id.* at 288 (quoting *United States v. Heller*, 579 F.2d 990, 999

(6th Cir. 1978)) (citation modified). Nevertheless, the indictment "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Id.* (quoting *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001)).

## III. DISCUSSION

### A. Giacona's Motion is Untimely

The Court set the motion deadline in this case, in a stipulated order to continue dates, for July 10, 2026. ECF No. 24, PageID.80. Giacona filed the instant Motion to Dismiss the Indictment, ECF No. 25, on July 30, 2026, 20 days late. He failed to request an extension of time to file the motion or provide good cause in his motion to excuse the 20 day delay in filing. *See id.*

"A pretrial motion made pursuant to Federal Rule of Criminal Procedure 12(b)(3) is untimely if filed after a deadline set by the district court pursuant to Rule 12(c)(1)." *United States v. Trujillo-Molina*, 678 F. App'x 335, 337 (6th Cir. 2017) (citing Fed. R. Crim P. 12(c)(3)). "But a district court may entertain an untimely motion "if the party shows good cause." *Id.* The Sixth Circuit has "explained that showing cause often requires developing and analyzing facts to assess whether the defendant can justify the late filing ... and prejudice." *Id.* at 338 (citation modified). "At a minimum, a party must 'articulate some legitimate explanation for

the failure to timely file.'" *Id.* (quoting *United States v. Walden*, 625 F.3d 961, 965 (6th Cir. 2010)).

Giacona offered no explanation in his motion or at the hearing for the untimely filing of the motion, and he failed to file a reply brief addressing this issue. On these grounds alone, the Court could deny Giacona's motion. *See Trujillo-Molina*, 678 F. App'x at 338–39 (affirming district court's denial of untimely motion to dismiss the indictment). However, as discussed next, the Court further finds that a merits review of the untimely motion yields the same result.

**B. The Indictment is Legally Sufficient**

Giacona has been charged in the Indictment with violations of 18 U.S.C. § 2261A(2) and 18 U.S.C. § 875(c).

Section 2261A(2) punishes a defendant, who:

> with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that—
>
> > (A) places that person in reasonable fear of the death of or serious bodily injury to a person, a pet, a service animal, an emotional support animal, or a horse described in clause (i), (ii), (iii), or (iv) of paragraph (1)(A); or

> (B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of paragraph (1)(A),
>
> shall be punished as provided in section 2261(b) or section 2261B, as the case may be.

18 U.S.C. § 2261A(2). "[T]o prove stalking under 18 U.S.C. § 2261A(2), the Government must establish that (1) the defendants used a facility of interstate commerce; (2) to engage in a course of conduct that places a person in reasonable fear of death or serious bodily injury, or causes substantial emotional distress, either to that person or to a partner or immediate family member; (3) 'with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate that person.'" *United States v. Gonzalez*, 905 F.3d 165, 180 (3d Cir. 2018).

Section 875(c) provides:

> Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 875(c). "To convict a person under this law, the government must prove that: (1) the defendant sent a message in interstate commerce; (2) a reasonable observer would view the message as a threat; and (3) the defendant intended the message as a threat." *United States*

*v. Howard*, 947 F.3d 936, 943 (6th Cir. 2020) (quoting *United States v. Doggart*, 906 F.3d 506, 510 (6th Cir. 2018)).

Giacona does not contest that the Indictment alleges the elements of the charges against him, but instead argues only that his statements are not "true threats," and instead are protected by the First Amendment as "political hyperbole advocating the use of force and the violation of law." ECF No. 25, PageID.89. Giacona relies on *Watts v. United States*, 394 U.S. 705 (1969), which held that the defendant's statement—"if they ever make me carry a rifle the first man I want to get in my sights is L.B.J."—made in the context of the political protest of the Vietnam war, was not a "true threat." *Id.* at 706–07. The Supreme Court found that "[t]aken in context [of a political rally], and regarding the expressly conditional nature of the statement," the statement was not a "true threat" but instead "was a kind of very crude offensive method of stating a political opposition to the President." *Id.* at 708 (citation modified).

Giacona argues that, like in *Watts*, his statements are about "political disagreements with current government policies" and are "not likely to incite or produce imminent lawless action." ECF No. 25, PageID.89. Giacona further contends that "some of [his] statements are not imminent threats, direct threats, or coherent threats." *Id.*

The Court disagrees. First, in this case, Giacona's threats lacked the word "if" and were not conditional as the was statement in *Watts*. *See United States v. Killingsworth*, No. 21-3028, 2022 WL 294083, at *3 (6th

Cir. Feb. 1, 2022) (distinguishing threat from conditional statement made in *Watts*). Further, Giacona's threats were not limited to political figures, but also targeted a lay adult victim—GW—an individual who had previously been targeted by Giacona in 2022. Considering the context of Giacona's threats, his repeated threats in 2025 thus indicate that the most recent threats were not mere jokes or political statements. *See Howard*, 947 F.3d at 948 (considering the context of defendant's threats and their repeated nature and noting that although the messages "may have been somewhat jumbled" "[n]othing about the context of the [voicemail] suggested he was joking"); *see also United States v. Woollacott*, No. 25-5723, 2026 WL 1683743, at *3–4 (6th Cir. June 10, 2026) (a reasonable jury could conclude that defendant's messages were a threat, in part, "when taken in context—[defendant] directly called the Congressman's office; the message followed a similarly threatening voicemail left by [defendant] a month earlier; [and] the statement had an ominous, visceral tone[.]"); *United States v. Craft*, No. 23-5706, 2024 WL 5003231, at *5 (6th Cir. Dec. 6, 2024) ("When read in the context of [defendant's] prior threats of physical harm, a reasonable observer easily could have perceived the message as an objectively serious expression of an intent to inflict bodily injury, even if its words were susceptible to more than one meaning. In turn, a rational jury could find, based on the evidence of [defendant's] prior conduct, that [she] subjectively intended her communication to be threatening.") (citation modified).

In addition, the First Amendment does not protect "true threats." *Virginia v. Black*, 538 U.S. 343, 359 (2003). True threats are "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Id.* To be a true threat within the context of 18 U.S.C. § 875(c), "the defendant must subjectively intend his communication to be threatening." *Doggart*, 906 F.3d at 512 (citing *Elonis v. United States*, 575 U.S. 723, 740 (2015)). The Sixth Circuit has stated that "[p]ertinent definitions of threat all revolve around a single theme: an expression of an intent to inflict loss or harm." *Id.* at 510–11 (collecting cases and dictionary definitions). "[A] statement can be found to be a 'true threat' even if the defendant lacks the ability to make good on his promised aggression." *United States v. Houston*, 683 F. App'x 434, 439 (6th Cir. 2017); *see also Howard*, 947 F.3d at 949 ("[W]e have consistently upheld convictions based on an expression of subjective intention to threaten the victim, even if the threat is not feasible for the defendant to carry out, or the defendant does not have an ability to do so."). "The relevant question is whether a reasonable observer would take his words to be an authentic threat." *Doggart*, 906 F.3d at 511.

Giacona's threats are similar to those in other cases which the Sixth Circuit found to constitute true threats as a matter of law on a sufficiency challenge. *See, e.g., Killingsworth*, 2022 WL 294083, at *1, 4 (finding statements in Facebook posts that "I think a cop needs killed around here

again" and "[M]ore cops need shot dead. They kill us, we kill them simple" constituted a "true threat"); *Howard*, 947 F.3d at 949 (defendant's voicemail saying "I'm going to kill you. I am going to murder you" was a true threat); *Doggart*, 906 F.3d at 510 (defendant's statements to a confidential source that "those guys [in Islamberg have] to be killed. Their buildings need to be burnt down. If we can get in there and do that not losing a man, even the better" were a true threat).

While the Government will bear the burden at trial to prove that Giacona's threats are "true threats," factual issues as to whether or not Giacona subjectively intended his statements to be threatening or political hyperbole remain the province of the jury, not the Court. *Killingsworth*, 2022 WL 294083, at *4–5. At the indictment stage, "the government's obligation is simply to directly set forth each element necessary to constitute the offense intended to be punished." *Id.* at *4 (citing *Hamling v United States*, 418 U.S. 87, 117 (1974)). Here, the Indictment alleges that Giacona intentionally and knowingly transmitted communications threatening to kill, injure, and harass the POTUS, the FBI, the CIA, Elon Musk, and adult victim GW, and thus a reasonable reader of the Indictment could conclude that Giacona "willfully and knowingly" transmitted the posts and electronic communications "for the purpose issuing a threat, or with the knowledge that [the posts and communications would] be viewed as a threat." *Elonis*, 575 U.S. at 740. At this motion to dismiss stage, the Court

"accept[s] the factual allegations [in the Indictment] as true." *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007).

Accordingly, the Court finds that the Indictment against Giacona tracks the language in 18 U.S.C. §§ 875(c) and 2261A(2) and alleges that Giacona intended his posts as a threat, and therefore is legally sufficient. The Indictment details each element of the charged offenses and is sufficiently specific to enable Giacona to plead double jeopardy in a subsequent proceeding. *See Coss*, 677 F.3d at 287–88. The determination of whether Giacona actually intended the posts as threats is a factual determination for the jury.

## IV. CONCLUSION

For the reasons state above, the Court finds that Giacona's Motion to Dismiss the Indictment is untimely.

The Court further finds that the Indictment against Giacona is legally sufficient pursuant to the Federal Rules of Criminal Procedure, and that the Government has not violated Giacona's First Amendment rights in bringing this charge. Whether the statements Giacona made rise to the level of true threats is a factual issue for the jury to decide.

Accordingly, for all these reasons, **IT IS ORDERED** that Giacona's Motion to Dismiss the Indictment, ECF No. 25, is **DENIED**.

Moreover, for the reasons set out on the record, the Government's Motion for Revocation of Pretrial Release is **DENIED** and its Motion for Psychiatric or Psychological Examination of Giacona is **GRANTED**. ECF No. 34.

**IT IS SO ORDERED.**

/s/Terrence G. Berg

Dated: November 17, 2026

HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE